[No. 28600. *En Banc.* July 16, 1942.]

LeRoy Smith, *Appellant,* v. Great Northern Railway Company, *Respondent.*[1]

*Edge, Keith & dePender, Leo N. Cashatt,* and *T. J. Fitzpatrick,* for appellant.

*Edwin C. Matthias, Charles S. Albert, Anthony Kane,* and *Ernest E. Sargeant,* for respondent.

Millard, J.—This appeal is from the judgment of dismissal, rendered upon plaintiff pedestrian's refusal to plead further after a demurrer had been sustained to his complaint in an action to recover for personal injuries.

The allegations of fact admitted by the demurrer to be true are summarized as follows: Howard street, the course of which is north and south in the city of Spokane, is crossed by the tracks (their course is east and west) of respondent immediately west of respond-

[1]Reported in 127 P. (2d) 712.

ent's passenger depot at what is known as a grade crossing. At this point, Howard street is one of the busy thoroughfares within the fire limits and in the business district of Spokane. On each side of Howard street, at this crossing, a sidewalk approximately ten feet wide is provided for use of pedestrians. Safety gates were installed at this crossing on the north and south sides of the railroad tracks to be let down for the purpose of blocking vehicular traffic when that portion of Howard street was used by respondent railway company.

One section of a city ordinance, reading as follows, prohibits a railroad company from blocking any street in the city of Spokane for a period exceeding five minutes:

"No engineer, fireman, conductor, brakeman, yard master, station agent, agent, division superintendent or other officer, agent or employe of any railroad company having a track within the city of Spokane, or any other person, shall cause or permit any train, engine, car or other obstruction to stand across any street within the city of Spokane or any part thereof for a longer period of time consecutively than five minutes."

Another ordinance, reading as follows, regulates the manner of operating railroads in the city of Spokane and provides a penalty for violation of the ordinance:

"Every railway company shall protect its train movements at grade crossings in the fire limits of the city of Spokane either by stationing a flagman at such crossings or by the installation of gates or other appropriate signal devices, as directed by the city council. Every railway company operating its railway at grade across any street outside. the fire limits shall, whenever directed to do so by order of the city council, install at such grade crossing a flagman, gates or other appropriate signal device as prescribed by such order. All safety devices now installed at any grade crossing in the city shall be maintained until the city council shall

by order permit the substitution of some other appropriate safety device."

About 9:30 p. m., May 10, 1941, one of respondent's passenger trains stopped with the locomotive on the west end of the train blocking the sidewalk on the east side of Howard street and extending out into the street a distance of approximately ten feet. The locomotive and train were permitted to remain in this location fifteen or twenty minutes, at which time the safety gates were not lowered to block traffic and no flagman was performing his duties at this crossing.

About 9:50 p. m., May 10, 1941, appellant was walking south on the east side of Howard street and approached the place where respondent's locomotive was blocking the sidewalk and a portion of the street. The train to which the locomotive was attached extended east a distance of several hundred feet. The locomotive was projecting into the street approximately ten feet west of the west line of the east sidewalk. Appellant walked around the front end of the locomotive, where the locomotive was projecting into the street, and, as he went around the front end of the locomotive, an automobile, operated by Eugene Clinton, approached suddenly from the south on Howard street and struck appellant.

Appellant alleged that the negligence of respondent consisted in blocking the sidewalk for an unreasonable length of time—in excess of five minutes—when there was ample room for respondent's train and locomotive east of the east line of the east sidewalk, failure to have the safety gate lowered to prevent automobiles from traversing the crossing, and failure to have a flagman at the crossing to protect pedestrians and vehicular traffic in going around the locomotive.

Counsel for appellant contend that the proximate cause of the accident, which occurred at the intersec-

tion of Howard street and respondent's railroad tracks, was respondent's negligence as alleged in the complaint. It is argued that, as appellant went out around the end of the locomotive, he was struck by an oncoming automobile which would not have been there had the gates been lowered as required by the ordinance; that, if the flagman had been on duty, appellant and the automobile operator would have been warned and the accident thereby averted; and, if the street had been blocked by respondent's train for a less period than five minutes, the sidewalk would have been clear for appellant to travel thereon.

Counsel for appellant invoke the rule enunciated by the supreme court of Missouri to the effect that, where the direct and immediate cause of the injury, although the independent act of a third person, belongs to a class against which the defendant is legally bound to protect the plaintiff as one of the general public, defendant will be liable in damages for such injury for defendant's failure to afford such protection. *Shafir v. Sieben*, 233 S. W. (Mo.) 419, 17 A. L. R. 637.

We understand it is appellant's position that, while the direct and immediate cause of the injury was the independent act of Clinton (the automobile operator), that cause belongs to a class (vehicular traffic) against which respondent was legally bound to protect appellant as one of the general public, hence respondent is liable in damages for its failure to afford such protection. It is urged that the concurring negligence of Clinton and respondent was the proximate cause of appellant's injury; that the completed wrong was the joint act of Clinton and respondent; therefore, either or both Clinton and respondent may be required to respond in damages for the injury suffered as a result of such tort.

 It would be an unsound, as well as a minority, rule which would permit one to recover for injury

resulting from his collision with an automobile while walking out into the street around the front of an engine or train which occupied a portion of a crossing for a period of time forbidden by ordinance. Conceding, *arguendo,* that respondent's violation of the ordinance constituted negligence *per se,* the occupancy by respondent's train of a part of the crossing was not the proximate cause of the collision of appellant with the automobile.

The case at bar is controlled by *Webb v. Oregon-Washington R. & N. Co.,* 195 Wash. 155, 80 P. (2d) 409. See, also, *Hendley v. Chicago & N. W. R. Co.,* 198 Wis. 569, 225 N. W. 205. There was no causal connection between respondent's alleged violation of the ordinance quoted above and the injury to appellant upon which could be predicated a liability of respondent. Respondent's violation of the city ordinance was not the proximate cause of appellant's injury, as it was not the efficient cause which set in motion the chain of circumstances leading to the injury. Respondent's acts, of which appellant complains, did no more than supply a condition by which the injury was made possible; and, as the subsequent independent act of Clinton caused the injury, the existence of the condition furnished by respondent's violation of the city ordinance was not the proximate cause of the injury. See *Okmulgee v. Hemphill,* 183 Okla. 450, 83 P. (2d) 189.

In *Jones v. Fort Dodge,* 185 Iowa 600, 171 N. W. 16, a boy, while on the street, was struck by an automobile. The court held, in affirming a directed verdict for the defendant, that the fact that travel on the sidewalk was obstructed because of the sidewalk being housed over during reconstruction of a building without formal permission of the city council, thereby causing pedestrians to travel in the street, the obstruction, if illegal,

was not the proximate cause of the injury. See, also, *Capelle v. B. & O. R. Co.*, 136 Ohio 203, 24 N. E. (2d) 822, and *Simpson v. Pere Marquette R. Co.*, 276 Mich. 653, 268 N. W. 769, and *Gary v. Struble*, 106 Ind. App. 518, 18 N. E. (2d) 465, which, in principle, are not distinguishable from the case at bar.

The judgment is affirmed.

ROBINSON, C. J., BEALS, STEINERT, SIMPSON, and JEFFERS, JJ., concur.

MAIN, J. (dissenting)—As stated in the majority opinion, the engine had stood across the sidewalk from fifteen to twenty minutes, the gates had not been lowered, and no flagman was in attendance. The rule that, where the causal connection between a person's negligence and an injury is broken by the intervention of a new, independent, and efficient intervening cause, the negligence is not actionable, is subject to the exception that, if the intervening cause was foreseen, or reasonably might have been foreseen, by the wrongdoer, his negligence may be considered the proximate cause of the injury, and he may be held liable therefor, notwithstanding the intervening cause.

In 38 Am. Jur. 726, § 70, it is said:

"The rule that the causal connection between a person's negligence and an injury is broken by the intervention of a new, independent, and efficient intervening cause so that the negligence is not actionable, is subject to the qualification that if an intervening cause was foreseen or reasonably might have been foreseen by the wrongdoer, his negligence may be considered the proximate cause of an injury, and he may be held liable, notwithstanding the intervening cause. The intervention of independent intervening causes will not break causal connection if the intervention of such forces was itself probable or foreseeable. Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence;

and if they are such as might, with reasonable diligence, have been foreseen, the last result, as well as the first, and every intermediate result, is to be considered in law as the proximate result of the first wrongful cause."

The qualification of the general rule stated in the text appears to be as well settled by the authorities as the rule itself.

It is not necessary that the particular injury be reasonably foreseeable; it is sufficient if it was foreseeable that some injury might result. *Brewer v. Lucedale*, 189 Miss. 374, 198 So. 42; *Malloy v. Newman*, 37 N. E. (2d) (Mass.) 1001; *Mars v. Meadville Tel. Co.*, 23 A. (2d) (Pa.) 856.

In the present case, with the engine standing across the sidewalk and extending into the street ten feet, as I view it, it was reasonably foreseeable that a pedestrian, approaching the engine on the sidewalk and seeing the gates were not lowered and no flagman present, would naturally attempt to walk around the front of the engine in order to return to the sidewalk. I think the question of whether it was foreseeable that an injury might be sustained by one passing around the front of the engine, was a question of fact for the jury and not one of law for the court.

The case of *Webb v. Oregon-Washington R. & N. Co.*, 195 Wash. 155, 80 P. (2d) 409, differs from this one, in that, there, the operator of the automobile did not see the standing train across the street until it was too late for him to stop the automobile; while, here, it is undoubtedly the fact that the appellant, when he approached the engine, saw it. As I view it, that case is not here controlling.

For the reasons above stated, I dissent.

BLAKE and DRIVER, JJ., concur with MAIN, J.